[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife was married to the defendant husband on January 4, 1975 at Danbury, Connecticut. The wife's birth name was Paduano.
Both of the parties have resided in the State of Connecticut for at least one year continuously prior to the institution of these proceedings.
Three children were born to the wife, all issue and minors, to wit: Gwen E. Foster, born March 11, 1977; Frederick G. Foster, born February 17, 1979; and Catherine M. Foster, born May 23, 1982.
Both of the parties are thirty-eight (38) years of age. The wife has a degree in Animal Husbandry from the University of Maine, and the husband has a Master's degree. Both of the parties are in good health.
The wife testified that she and her husband had an understanding that she would take care of the house, raise the children and that he would be the wage earner. Although she worked during the early stages of the marriage, she had CT Page 6840 to stop because of her pregnancy and did not return to work until 1990. The wife took care of the house, did some interior painting, gardening, cooking, cleaning and the myriad of other jobs attendant to maintaining a household and caring for children.
The wife now works as a part-time technician and manager in a veterinarian's office. She works on an average of twenty-five (25) hours per week and earns $12.50 per hour with no benefits. She testified that she wants to spend time with her children and for that reason refuses to consider full-time employment. The testimony of Dr. Silberleib, her employer, that she has been offered more hours and even full-time employment, but she has refused. He further testified that if she became a full-time employee, she would receive up to 50 percent of the cost of her medical insurance.
The wife claims that each of the parties should bear equal responsibility for the breakdown of the marriage. She offered little testimony as to fault except to say that their problems arose early in the marriage. There would be arguments and long periods of silence for which both parties must share the blame. She also said that her husband did not spend enough time at home and she finally realized in 1985 that the marriage was not going to work out. They went on separate paths from that point until 1990 when she filed for divorce.
The wife urges that the court take under consideration the monetary contribution made by her family during the course of the marriage. She testified that her father sold property to her for $44,000.00 rather than $63,500.00, which was the fair market value, and that as a result of this transaction she should be given credit for $20,000.00, which was in fact a "gift" from her father. She further claims that any appreciation in the value of that property should be prorated and further credit given to her.
The wife also claims credit for stock, bonds and a new automobile given to her by her father during the course of the marriage, as well as her brother's contribution in helping to acquire the present marital home.
The wife's attorney, in his trial memorandum, argues that both statutory mandates and case law require the wife be given credit for these family contributions. It is unclear to the court what is meant by "credit." Nowhere in our statutes or in case law does it indicate that "credit" is to be given for such contributions; rather, our law indicates CT Page 6841 that the court should take "under consideration" in fashioning its orders, such gifts and subsequent appreciation. The court will certainly take under consideration these contributions as well as all of the other factors which it must consider in all dissolution matters. There is no doubt in the court's mind that the wife's family did render substantial financial assistance to the husband and wife.
The husband tells an entirely different story as to the cause of the breakdown of the marriage. He claims that the wife's relationship with Denise Griss was the reason that the marriage broke up. The court need not relate the testimony concerning the relationship. Suffice it to say that the court is persuaded that it finds the husband's testimony more persuasive and attributes fault to the wife.
The husband has had a "roller coaster" career. He started as a teacher earning a modest income, and then in 1980 he left teaching to joining Pilgrim Electronics, a company owned by his wife's family. He stayed there until 1990 and earned as much as $136,000.00 a year. In 1990, he left Pilgrim to start his own company. It does not appear that his wife had any strong objections to his leaving Pilgrim. This proved to be a financial disaster since very little income was realized and the aspiration of success was never realized. In November, 1991, the husband joined Fusion Data at an annual salary of $38,500.00.
On the basis of evidence presented, the court makes the additional findings:
A. The husband's failure to place the wife on his insurance policy has resulted in the wife's not being presently covered by any medical plan.
B. The residence has a fair market value of $261,000.00.
C. The 75 shares of stock in Shawmut are not to be considered by the court in the distribution of assets.
D. The wife took $10,000.00 from a C.D. and placed it into an account in her name and in her mother's name.
E. The wife place the sum of $3,300.00 into an account with Denise's sister.
F. The husband, as of February 3, 1992, had an account with his mother in the amount of $4,572.00, which CT Page 6842 account does not appear on his financial affidavit. As of the date of the dissolution hearing, said account had a balance of approximately $1,100.00
G. The husband closed out an IRA account in the amount of $13,344.00. Most of the money was used, however, to support the family.
H. The wife has an ability to work full-time and to receive a portion of her medical insurance paid by her employer. Accordingly, the court finds that she has the ability and capacity to earn a gross of approximately $475.00 per week.
I. There is the sum of $45,659.00 due the husband from Pilgrim.
Having taken under consideration all of the testimony and the provisions of Connecticut General Statutes, Secs.46b-81, 46b-82 and 46b-84, the court further orders as follows:
1. The marriage has broken down irretrievably, there is no prospect of any reconciliation, and a decree of dissolution may enter.
2. Custody of the minor children shall be joint with the primary residence being with the wife. The husband is granted flexible and reasonable rights of visitation. If either party intends to live with another person, then he or she shall notify the other party in writing thirty (30) days prior to the date of the commencement of said living arrangement.
3. The husband shall pay as support for the minor children the sum of $90.00 per week per child. These orders are in compliance with the child support guidelines.
4. The husband shall maintain medical and dental insurance for the minor children as available through his employment. All unreimbursed medical and dental costs shall be divided equally between the husband and the wife. These orders are entered subject to the provisions of Connecticut General Statutes, Sec. 46b-84 (c).
5. The husband shall quitclaim all of his right, title and interest in the marital home to the wife. She shall be responsible for the payment of the mortgage and all other expenses concerning said residence. She shall also be responsible for whatever debt is owned to her father. She CT Page 6843 shall hold the husband harmless and indemnify him from any and all claims made relative to these assumed obligations.
The wife shall execute and deliver to the husband a mortgage deed and note in the amount of $15,000.00, which note shall be paid upon the happening of the first of the following events:
a. Death of the wife.
b. Sale of the premises.
 c. When the oldest child reaches his or her 19th birthday.
6. The husband shall pay as periodic alimony to the wife the sum of $50.00 per week, which alimony shall terminate upon the happening of the first of the following events:
a. Death of either party.
b. Marriage of the wife.
c. Cohabitation by the wife.
d. Five (5) years from the date herein.
Said alimony shall be nonmodifiable as to term.
7. Each of the parties are to retain their own IRA, bank accounts, stock, etc.
8. The wife shall have sole and exclusive ownership of the Caravan, and the husband shall have sole and exclusive ownership of the Isuzu.
9. For so long as the husband is obligated to pay alimony, he shall name the wife as irrevocable beneficiary on a $40,000.00 life insurance policy.
10. The husband shall be entitled to claim Gwen and Frederick as exemptions and the wife shall be entitled to claim Catherine as an exemption. The wife shall execute any and all documents necessary to effect said order.
11. The husband shall within sixty (60) days pay to the wife, as an allowance to prosecute, the sum of $1,500.00.
12. All of the furnishings in the marital home shall CT Page 6844 become the sole and exclusive property of the wife with the exception of the following which shall be the husband's:
Stereo amp
Record changer and various records
Various books
Living room couch
Mug collection
Lionel train collection
Lubeck painting — ducks
One-half of the pictures of the children growing up
Pictures of map in frame
One wheelbarrow
All shelving in the garage/cellar
Entire dining room set
Royal Copenhagen set
 All of the crystal and the silver spoon collection and silver cake server
Wood stove (in the basement)
Each of the parties shall retain whatever interest they presently have in the log splitter.
13. Except as otherwise provided herein, each of the parties shall be responsible for his or her own liabilities.
14. The accounts presently held for the benefit of the children shall be maintained in said accounts for the benefit of the children.
MIHALAKOS, J. CT Page 6845